**AMERICAN SAMOA GOVERNMENT, Plaintiff**

**v.**

**HARRY TAYLOR, Defendant**

High Court of American Samoa
Trial Division

CR No. 8-90

February 10, 1991

Before REES, Associate Justice, and TAUANU'U, Chief Associate Judge.

Counsel: For Plaintiff, John W. Cassel, Assistant Attorney General
For Defendant, Barry Rose, Assistant Public Defender

On August 7, 1990, after a hearing to determine the defendant's competency to stand trial pursuant to A.S.C.A. §§ 46.1301 et seq., we held that the evidence preponderated against a finding of present competency. We made it clear that the question was a close one and that our finding was partly due to the government's presentation of practically no evidence. (This was apparently due not to prosecutorial negligence but to last-minute difficulties in arrangements with the expert witness who had been scheduled to testify.) Although we had serious doubts about the conclusion of the expert witness presented by the defense, to the effect that defendant suffers from a mental disorder called dementia which makes it impossible for him to understand the proceedings against him or to assist in his own defense, we found this conclusion to be supported by the preponderance of the evidence presented at the hearing.

We ordered, pursuant to A.S.C.A. § 46.1305, that defendant be confined pending a further hearing to be held within 120 days to determine whether defendant was then competent to stand trial or, if not, was substantially likely to become competent within a year. The second competency hearing was held on December 7 and 10, 1990.

We now find the defendant competent to stand trial. The evidence taken at the second hearing, even when taken together with the evidence at the first hearing, preponderates against a finding that defendant suffers from dementia or any other severe mental disorder.

Although not of particularly high intelligence, defendant is not mentally retarded. He appears to have at least a rudimentary ability to think abstractly and to discuss concepts, including legal concepts. He is eager to assist in his own defense and gets along well with his attorney.

It does appear that there have been certain gaps or obstacles in defendant's ability to communicate with counsel about legal strategy. One such problem, defendant's apparent belief that he would be sentenced to death if convicted (despite counsel's assurance that American Samoa has no constitutionally enforceable death penalty statute), has been solved since the first hearing. Defendant no longer

43

believes he will get the death penalty.

Defendant still may have problems discussing certain other questions, particularly the insanity defense and the question of how and why a weapon that was involved in the case was transported to American Samoa. The evidence suggests, however, that these problems stem neither from any comprehensive mental disability nor (as the Government's expert suggested) from any defects in defense counsel, who appears to be doing an excellent job. Rather, the descriptions we have heard of defendant's statements on these issues impress us as having to do with emotional reactions such as many an otherwise reasonable person would have in contemplating the possibility of his own insanity or in discussing half-forgotten private thoughts and actions which may seem in retrospect to have been vague, confusing, or shameful. Even if defense counsel should have no success in his continuing effort to persuade defendant to adopt a more open and flexible attitude toward these issues, we could not say on that account alone that the defendant does not have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" or "a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960).

Defendant does have a heart condition and other physical problems that could render him too ill for trial at any given time. If this appears to be the case on the day scheduled for trial, or becomes the case during the course of the trial, a continuance or even a mistrial might be necessary. We do not believe, however, that defendant's medical problems render him incompetent to stand trial. During the several days of the two competency hearings he appeared attentive and alert. Indeed, the defendant gave every outward appearance of understanding what was being said.

One incident, in which the defendant was for a few minutes unable to remember his counsel's name, does not fit easily into the above analysis. This may have been related to a "cardiac crisis" such as the defendant may have had on another occasion while being examined by the defense expert, or to a mild epileptic episode, or just to the fact that defendant had recently awakened and was momentarily disoriented. It could also be symptomatic of deeper problems. At present, however, it is the only incident of its kind of which we have been made aware. Perhaps the one fact on which the parties agree is that defendant generally has quite a good memory. Nor does the incident we have described suggest that the defendant is generally unable to work with his

44

counsel.

The expert witnesses for the two parties took quite different approaches to the evaluation of competency, and each made it clear that he did not think much of the methodology employed by the other. Although the Court adopts the conclusion advanced by the Government's expert, this is not to be taken as implicit acceptance of his criticism of the defense expert --- nor, indeed, of outright rejection of all the defense's criticisms of the approach taken by the Government expert. In particular, the "Competency to Stand Trial Assessment Instrument" impressed us as simplistic and circular in theory and as highly susceptible to idiosyncracies and errors in application. Several other tests administered by the Government's expert, however, appear to be reliable in assessing general intelligence and the ability to think abstractly and in identifying symptoms of mental disorders that might interfere with such thinking. Although none of these tests appears to have been specifically "validated" for Samoans or Pacific islanders as a group, the literature supplied by both experts suggests that the risk run in giving the test to a member of a group for whom it has not been validated is that he will seem less intelligent or more psychotic than he really is, not the other way around. There does not seem to be any risk that such testing will generate a false impression of intelligence or of the absence of mental disorders.

The Court also questioned both experts at length about the data they considered in reaching their conclusions and has attempted, as far as possible, to make an independent evaluation of this data in light of the significance the experts suggested it ought to have and the Court's own understanding of the legal standards to be applied. The Court has also considered the information supplied by the other witnesses at the two hearings and in the affidavits of defense counsel and has listened to taped conversations with the defendant. Our conclusion is that the defendant, while undoubtedly quite far from being the perfect communicator or the perfect legal strategist, is capable of understanding the things he needs to understand in order to have a fair trial.

We hold that the defendant is competent to proceed. The case will be set for trial upon motion of either party.